UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RANDY PATTERSON, | ) | |
| | ) | |
| Plaintiff, | ) | 19 C 1464 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| SNYDERS LANCE, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Randy Patterson filed this *pro se* suit against his former employer, Snyders Lance, alleging that it wrongfully terminated him and failed to reasonably accommodate his disabilities in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Doc. 13; Doc. 61 at 4-5, 8-10. Earlier in the litigation, the court denied Snyders Lance's motion to dismiss the suit as untimely. Doc. 20. With discovery closed, Snyders Lance once again moves to dismiss, and moves as well for summary judgment. Doc. 53. The summary judgment motion is granted and the motion to dismiss is denied as moot.

**Background**

**A.     Patterson's Noncompliance with Local Rule 56.1(b)(3)**

Consistent with Local Rule 56.1, Snyders Lance filed a Local Rule 56.1(a)(3) statement of undisputed facts along with its summary judgment motion. Doc. 54. The factual assertions in the Local Rule 56.1(a)(3) statement cite evidentiary material in the record and are supported by the cited material. *See* N.D. Ill. L.R. 56.1(a) ("The statement referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph.").

If Patterson wished to oppose summary judgment, Local Rule 56.1 required him to file:

> (1) any opposing affidavits and other materials referred to in Fed. R. Civ. P.
> 56(e); (2) a supporting memorandum of law; and (3) a concise response to the
> movant's [Local Rule 56.1(a)(3)] statement that shall contain: (A) numbered
> paragraphs, each corresponding to and stating a concise summary of the
> paragraph to which it is directed, and (B) a response to each numbered
> paragraph in the moving party's statement, including, in the case of any
> disagreement, specific references to the affidavits, parts of the record, and
> other supporting materials relied upon, and (C) a statement, consisting of
> short numbered paragraphs, of any additional facts that require the denial of
> summary judgment, including references to the affidavits, parts of the record,
> and other supporting materials relied upon.

N.D. Ill. L.R. 56.1(b).  Rather than file a Local Rule 56.1(b)(3)(B) response or a Local Rule

56.1(b)(3)(C) statement of additional facts, Patterson included in his Local Rule 56.1(b)(2)

memorandum of law several unnumbered paragraphs of factual assertions.  Doc. 61 at 2-10.

Because those paragraphs do not reference or correspond to Snyders Lance's Local Rule

56.1(a)(3) statement, they do not satisfy Local Rule 56.1(b)(3)(B)—which, as just noted,

required Patterson to file a "concise … response to each numbered paragraph in [Snyders

Lance's] statement, including, in the case of any disagreement, specific references to the

affidavits, parts of the record, and other supporting materials relied upon."  N.D. Ill. L.R.

56.1(b)(3)(B).  Because the factual assertions in Patterson's memorandum do not qualify as a

Local Rule 56.1(b)(3)(B) response, they do not controvert any part of Snyders Lance's Local

Rule 56.1(a)(3) statement, the entirety of which is deemed admitted.  *See* N.D. Ill. L.R.

56.1(b)(3)(C) ("All material facts set forth in the [Local Rule 56.1(a)(3)] statement … will be

deemed to be admitted unless controverted by the [Local Rule 56.1(b)(3)] statement of the

opposing party."); *see also Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015)

("The purpose of [Local] Rule 56.1 is to have the litigants present to the district court a clear,

concise list of material facts that are central to the summary judgment determination.  It is the

litigants' duty to clearly identify material facts in dispute and provide the admissible evidence

that tends to prove or disprove the proffered fact. A litigant who denies a material fact is required to provide the admissible evidence that supports his denial in a clear, concise, and obvious fashion, for quick reference of the court."); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("Because of the important function that local rules like [Local] Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules. … [Local] Rule [56.1(b)(3)(B)] required [the non-movant] to admit or deny each factual statement proffered by [the movant].") (internal quotation marks omitted); *FTC v. Bay Area Bus. Council*, 423 F.3d 627, 633 (7th Cir. 2005) ("We are hard-pressed to see how [the] affidavit could constitute compliance with [Local] Rule 56.1. … [The] affidavit in no way constitutes a concise response to each numbered paragraph in the [Local Rule 56.1(a)(3)] statement.") (alteration and internal quotation marks omitted).

Moreover, the court will not deem the factual assertions in Patterson's memorandum of law to be a Local Rule 56.1(b)(3)(C) statement because he does not cite record evidence to support those assertions. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("[A] [Rule 56.1(b)(3)(C)] statement[] [must] consist[] of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon."). Accordingly, the court will disregard those assertions. *See Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 710-11 (7th Cir. 2015) ("[The non-movant] failed to cite or submit evidence in support of nearly all of the additional facts he asserted. … Accordingly, the district court did not abuse its discretion in disregarding the facts contained in [the non-movant's] statement of additional facts that were not supported by proper citations to the record."); *Bryant v. Bd. of Educ., Dist. 228*, 347 F. App'x 250, 253 (7th Cir.

2009) ("The district court was entitled to disregard those assertions in [the non-movant's] proposed statement of facts that violated Local Rule 56.1 by not being properly supported[.]").

All that said, the court is mindful that "a nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not … automatically result in judgment for the movant. [The movant] must still demonstrate that [he] is entitled to judgment as a matter of law." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (internal quotation marks omitted). The court therefore will recite the facts as favorably to Patterson as the record and Local Rule 56.1 permit. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). At this juncture, the court must assume the truth of those facts, but does not vouch for them. *See Gates v. Bd. of Educ. v. Chi.*, 916 F.3d 631, 633 (7th Cir. 2019).

### B. Material Facts

Patterson worked as the warehouse manager at Snyders Lance's distribution facility. Doc. 54 at ¶ 24. Patterson's duties required him, among other responsibilities, to lift up to fifty pounds and to operate a forklift and a pallet jack. *Id*. at ¶¶ 26-29. On January 23, 2017, Patterson's wife notified Snyders Lance that he could not work for at least two weeks due to a medical issue. *Id*. at ¶ 32. Snyders Lance's third-party employee leave administrator, Cigna Leave Solutions, provided Patterson with paperwork under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, offering him twelve weeks of protected leave. Doc. 54 at ¶ 36. Following additional communications, his FMLA leave was approved through April 10, 2017, and a personal leave of absence was granted through May 20, 2017. *Id*. at ¶¶ 37-40.

On March 24, 2017, a few weeks before the FMLA leave was set to expire, Cigna sent ADA paperwork to Patterson directing him and his medical provider to submit any request for accommodations that would allow him to return to work and perform the essential functions of

4

his job. *Id*. at ¶ 41. Patterson did not return the ADA paperwork. *Id*. at ¶ 50. Cigna sent follow-up letters to Patterson on April 5, April 27, and June 6, informing him that ADA leave was not approved, reminding him that certain medical information was needed, and urging him to contact Snyders Lance's Human Resources Department. *Id*. at ¶¶ 43, 46, 49. Cigna continued to receive no ADA paperwork from Patterson, but it did receive medical records dated April 7 and May 23 from his physician. *Id*. at ¶¶ 44, 47, 50. The April 7 records indicated that Patterson had "residual left sided weakness in his left leg and arm" following a stroke, and reported that he could not "work" or "lift anything because of serious risk of injury (or operate machinery)." *Id*. at ¶ 45 (quoting Doc. 54-8 at 10). The May 23 records stated much of the same, with the physician noting that she was unsure when Patterson could return to work with or without restrictions. *Id*. at ¶ 48.

Because Cigna had not heard from Patterson himself, Erica Cabrera—one of Snyders Lance's Senior Human Resources Generalists—re-sent the ADA paperwork to him in a June 6 email. *Id*. at ¶ 50-51. Patterson's wife responded the next day, acknowledging receipt. *Id*. at ¶ 52. Cigna sent a follow-up on June 12. *Id*. at ¶ 53. Two days later, with the paperwork still missing, Cabrera again reached out to Patterson's wife to ask about its status. *Id*. at ¶ 54. Patterson's wife responded by telling Cabrera that Patterson could not yet return to work, even with restrictions, but she never supplied the paperwork. *Ibid*. Cigna later received word from Patterson's physician that, as of June 23, he had not been cleared to return to work due to his inability to move his left hand and minimal ability to move his left arm. *Id*. at ¶ 55.

On June 27, Patterson's wife phoned Brenda Mummert—the Human Resources Coordinator—to report that he could not return to work at that point and that his next medical appointment was at the end of July. *Id*. at ¶¶ 19, 57. Given that report, Snyders Lance decided

to post a job opening for Patterson's warehouse manager position. *Id*. at ¶ 59. On July 6, days after the opening was posted, Cigna sent Patterson one final letter stating that his request for ADA leave was "Not Supported" due to his failure to submit the necessary paperwork. *Id*. at ¶ 61. After hearing nothing in response, Cigna closed Patterson's file on August 17. *Id*. at ¶ 65.

On December 15, Snyders Lance sent Patterson a letter stating that he would be terminated on January 16, 2018 if he did not by then either return to work or contact Human Resources about an alternative arrangement. *Id*. at ¶ 69. The letter suggested that Patterson could request accommodations or speak with Human Resources about further extending his time off. *Ibid*. Having heard nothing by January 16, Snyders Lance terminated Patterson that day. *Id*. at ¶¶ 64, 70.

### Discussion

The ADA's antidiscrimination provision states that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability," with the prohibited discrimination including the entity's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee." 42 U.S.C. § 12112(a)-(b). As evident by its text, the provision allows for both "disparate treatment *and* failure to accommodate" claims. *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019) (citing 42 U.S.C. § 12112(b)). Patterson appears to bring both claims. Doc. 13 at 4; Doc. 61 at 4-5, 8-10.

To "survive summary judgment" on either claim, a plaintiff must adduce evidence sufficient for a reasonable jury to find that he is "'a qualified individual.'" *Stern v. St. Anthony's Health Ctr*., 788 F.3d 276, 285 (7th Cir. 2015); *see also Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 241 (7th Cir. 2018) (holding that the plaintiff's "[ADA] claims for discrimination and

failure to accommodate fail at the start because he cannot demonstrate that he is a 'qualified individual'").  The ADA "defines the term 'qualified individual' as: 'an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'"  *Rodrigo*, 879 F.3d at 241 (quoting 42 U.S.C. § 12111(8)).  "[I]t is the plaintiff's burden to" show that he is a qualified individual by "produc[ing] evidence sufficient to permit a jury to conclude that []he would have been able to perform the essential functions of h[is] job with a reasonable accommodation."  *Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 418 (7th Cir. 2016) (internal quotation marks omitted).

It is undisputed that Patterson has an ADA-qualifying "disability," 42 U.S.C. § 12102(1), on account of reduced mobility in his left hand and arm.  Doc. 55 at 7.  Snyders Lance argues that summary judgment is nonetheless warranted because Patterson fails to establish that he is a "qualified individual."  *Id.* at 7-9.  That is correct.  On the summary judgment record, a reasonable jury could not find that Patterson could have performed the essential functions of his position as warehouse manager with (or without) a reasonable accommodation.  When Patterson was terminated on January 16, 2018, the only information that Snyders Lance had about his status was that he was unable to return to work in *any* capacity.  That was apparent from his June 23, 2017 medical records and the phone call his wife made to Mummert four days later, which were the final communications Snyders Lance received before terminating him.  Doc. 54 at ¶¶ 55, 57.  Despite several reminders, including five follow-up letters from Cigna and two emails from Cabrera, Patterson never requested any accommodation that would have allowed him to perform his job—the duties of which included operating a forklift and lifting up to fifty pounds—or, for that matter, any other job at Snyders Lance.  *Id.* at ¶¶ 26, 29, 43, 46, 49, 50, 53,

54, 61, 64.  (For much of this litigation, Patterson was similarly inattentive to his responsibilities as a litigant.  Docs. 26, 28-29, 31-32, 34, 37.)  Accordingly, because Patterson cannot show that he is a "qualified individual," his "claims for discrimination and failure to accommodate fail at the start."  *Rodrigo*, 879 F.3d at 241.

### Conclusion

Snyders Lance's summary judgment motion is granted, and its motion to dismiss is denied as moot.

February 16, 2021

_____
United States District Judge